Page number 09-1215 Jocelyn Cooney, et al. v. Chicago Public Schools, et al. Good afternoon, your honors. My name is Mark Blumenthal, Law Office of Mark N. Blumenthal. This is a case in which two lawsuits were filed and then they were consolidated. So if it pleases the court, and there were a number of attorneys that participated in writing the briefs. So why don't you just let us know what the briefs were. Let us know how you'd like to divide up the 15 minutes that your side has. We've read all the briefs and we've read the record. Why don't you tell us where you find the duty? Okay. With regard to the negligence, your honor, we find the duty in the fact that there was no safeguarding of the briefs. There was no safeguarding of the briefs. There was no safeguarding of this very important information. In the Personal Information Protection Act, the name and Social Security number together is personal information. And that personal information, along with the other information in the COBRA Open Enrollment List, which included certain health insurance information, whether or not there was going to be social security. It was going to be going to be contingency insurance. It was going to be a single or a couple coverage. Here, let me stop you for a minute. A duty is either created in common law or by statute. So where does your duty come from? Are you saying it comes from that particular statute? The duty is found in the fact that the Chicago Board of Education and all printing, the two defendants, did not safeguard the briefs. They did not safeguard the information, the personal information. Are you talking about a statutory duty or a common law duty? Your Honor, I look at this as a case of first impression. And there is no statutory duty that we're pointing to. We're asking this Court to create. You want us to create a duty? Well, to create the duty based on the fact that there are at least three statutes, the Personal Information Protection Act, the Consumer Fraud Act, and HIPAA, which deals with these, with the information that was in those pamphlets. Let me suggest that you're not asking us to create a duty. You're asking us to recognize a duty that already exists because Social Security numbers are safeguarded by everyone. I mean, nobody discloses their Social Security number to anyone else. In fact, now the shorthand way of doing it is always by the last four numbers as opposed to all seven. Seven? Nine. Nine. Yeah, nine. So you're asking us to recognize a duty, and you're asking us to recognize that duty under the duty analysis of our Supreme Court that looks at the burden on the other side and a variety of other elements. Is that your position? Yes, Your Honor. We are asking you to recognize a duty. Judge Novak noted that this case really resulted from a snafu, an eye-opener, and that's what we're asking you to do. I understand that, but that doesn't mean that if there is a snafu, that the party that created it just takes a pass. That would change. Snafu sounds a little like negligence, and negligence itself is something that could violate a duty. Yes, Your Honor. That would be the common law, negligence. So I'm not sure that there's a snafu exception to the existence of a duty to safeguard Social Security numbers. I agree with you, and I think that the legislature, by coming out with the Personal Information Protection Act and the Consumer Fraud Act, 5052RR, would agree with you as well. So we would like you to reverse the Supreme Court. Well, that only gets you at least to the duty aspect. How about damages? Damages, Your Honor, there has been very little discovery, but Joan Riley, who is one of the plaintiffs, began to purchase the credit protection once the Social Security number had been disseminated. She's been paying about $7, $8 a month since it started. That's a damage. Well, that was voluntary, isn't it? And isn't it the same coverage that the Board offered to all 1,700 individuals? Your Honor, it was voluntary, but the Board offered the coverage for one year. So if you had a chance to be looking at 1,700-plus Social Security numbers and know that only one year of coverage was out there, once that year passes by, I think identity theft can become rampant. She's been paying it for much more than a year now. Well, what if it was recognized by individuals that the way these Social Security number thieves operate, that they're not going to get away with it? They operate immediately upon obtaining that information. They don't sit on information for a year or longer and then decide, well, now I'm going to use the Social Security numbers that I have in my possession. You know, why isn't a year sufficient protection in light of what may be occurring out there? Well, I think based on the way these identity theft individuals operate and identify themselves, they're going to get away with it. I don't know, but it would make sense that because of the publicity given to this particular problem with the Board and the one year that was offered, over 1,700 people knew that it was only going to be for one year. And I think it's pretty clear that out of that number it's possible, and it's a much greater number, out of that number it's possible that there could be identity theft. We'd only find that out through discovery, and we haven't gotten there yet because the motion to dismiss was granted. So I think that based on the two statutes that have been created, which were in effect when the packet was mailed, there is a duty, and we've alleged the duty, we've alleged the damage, and we've alleged the damage. And the plaintiff believes that negligence has been properly alleged in its complaints. Regarding damages, how do you get around the Seventh Circuit's 2007 case of Pissiota versus Old National Bancorp, where they, where the Seventh Circuit remarked that the risk of future identity theft is simply a matter of time. Is that an allegation that is, can't be, isn't sufficient to allow a claim to go forward? Well, that's the risk of the identity theft, but we're asking the court to see that one of the plaintiffs was proactive and actually spent money. She also had a charge. But you can't create, you can't create your own damages. And that's what, that's what that argument sounds like. It sounds like one of the plaintiffs spent money to protect herself, and therefore she was damaged. It sounds like she's creating her own damages. There's also an allegation of a charge that this individual had that we can't trace right now that it had anything to do with the mailing that happened after the mailing. And I remember reading that, and I don't know what the percentage is, and I meant to do this, but she is one of, one in 1,700. And if that very same percentage applies to adults over the age of 18, then she is one in 1,700. Now, she was overall at risk for identity theft across the United States without the disclosure of Social Security numbers. It could be explained by virtue of that reality to her. She just happened to be one of those individuals, and it had nothing to do with the release of her Social Security number to everyone else. It just happens that she was the unfortunate one, just like there are a multitude of unfortunate ones across the United States, states that suffer identity theft without any real explanation. That's understandable, Your Honor, and that's why these are very difficult cases. They are difficult cases, and that's why, you know, the duty element is maybe less difficult to deal with, although I'm sure that's the appellee's initial claim. And that was the trial judge's, seemed, she relied on the absence of a duty to build the case. And she was the one that put her ruling around. And she is the one that used the word snafu, and I think that it just, at this point, that that shouldn't be the basis for allowing a defendant to avoid liability. And I do agree with you. Unfortunately, Mr. Blumenthal, you're not going to be able to address all three points that you hope to cover, but we will give you an opportunity to make a rebuttal argument, and I'd like to pass that along to you. Next counsel. May it please the Court, my name is Keith Hunt. I'll be addressing the 1983 common law right of privacy, fiduciary duty toward immunity, very, very quickly. But before I do, I wanted to point out two things. First of all, when the defendants purchase credit protection coverage, they acknowledge the existence of actual injury. That admission alone should be sufficient to withstand a motion to dismiss at the pleading stage. Second of all, many of these injuries take place over many, many years, and while some savvy credit please. Why isn't the purchase of identity protection insurance no different than the protection that auto insurance gives you? It doesn't acknowledge that an accident has happened or will happen. It simply says in the event something should happen, you are going to be protected. Why isn't it analogous? I think it's not analogous because, as the district court noted in the Roe decision, Judge Hibbler noted, that the possibility or likelihood of future injury is, in and of itself, and he was interpreting Illinois law at the time, in and of itself is enough actual injury to withstand a motion to dismiss. And he specifically distinguished the Pisciata decision on the ground that that was decided only under Indiana law, not Illinois law. So when the Seventh Circuit reached that decision, it has nothing to do with this case. It's not even persuasive authority for purposes of this case. It's decided under a different law where there's absolutely no Indian authorities on point to deal with that. Then what did Judge Novak do with Judge Hibbler's decision? She didn't have Judge Hibbler's decision because Judge Hibbler's decision was decided in July of this year, and she decided this case long before that. I submit that had she had the benefit of the wisdom of Judge Hibbler's decision, she would have reached a contrary conclusion. With respect to the 1983 action, the trial court erred in dismissing the 1983 action. 1983 was specifically enacted to protect and enforce federally protectable rights, either under the Constitution or under a federal statute. I think the trial court got twisted in the analysis by limiting unfairly and unnecessarily the applicability of civil rights laws in 1983 to only the traditional sort of black versus white civil rights type issues, when clearly they have been, in 1983, has been applied far beyond that in the free speech context, the equal protection context. What constitutional rights at stake here? Fourth Amendment right of privacy made applicable to the states under the 14th Amendment. And has the Fourth Amendment ever been applied to the disclosure of social security numbers? Actually, in a recent case that we want to bring to the court's attention that was decided after the briefing was concluded in this case. You know the procedure for that, right? You file a motion to cite additional authority. And I'd be happy to do that. And you get copies to the council and we'll rule on it accordingly. Okay. We can do that. But it has been recognized that the combination of a home address and a social security number is sufficient to trigger a privacy interest under the Fourth Amendment. And in this case we have more than that because we have home address plus social security number plus health information. And as was recognized... When you say health information, I'm not sure revealing the general program that you're enrolled in or you have been enrolled in or you were previously enrolled in qualifies as some sort of medical disclosure. Because if you ask someone are you a state employee, in a sense you've just received information regarding that individual's health insurance program or at least you've narrowed it down to two or three or four options that that individual has as a state employee. So I don't understand why the simple disclosure that this person elected one program over another is some sort of medical disclosure. Well, if you look at the case law in this area, the courts have looked at several different areas and have concluded that each is entitled to Fourth Amendment privacy protection. They've looked at financial information and specifically in the insurance context and insurance disclosures. So this would be an insurance disclosure. Secondly, it's looked at the context of medical information. Thirdly, it's looked at the context of social security coupled with home. What areas are you relying on for those propositions? You say that these cases have looked at those. Where do you cite them in your brief? I have the two decisions that we're filing the motion on. Okay. All right. Good. We'll put off that discussion until you do. In the context of those decisions, the courts also analyzed the applicability in other contexts. All right. So that's 1983. You're talking about fiduciary responsibility as well. Yes. And we think fiduciary duty is imposed here and should be imposed by virtue of the special relationship between the parties as employer and employee as well as pension. Between fiduciary duty and negligence or duty, common law duty, is there a distinction worth any difference here? I mean, does the existence of a common law duty suffice for your case and really there's no need to go into fiduciary duty? What does it give us that common law duty doesn't? Well, I think given the nature of the relationship, it's going to impose an extra duty of care on the defendants for the handling of the information and will allow the jury to award enhanced or exemplary damages where they would not otherwise be normally awarded in the context here. But of course, if we reverse on the duty element and setting aside all the other issues that might come up, then we could certainly remand and allow the court to review whether fiduciary duty has also been made up. You could do that if I respectfully submit that given the fact that duty is a question of law in the first instance, this court is in a good position to recognize that duty. The trial court has already had its opportunity. If this court reverses, it should be reversing with instructions to recognize the duty and going forward. Except as your counsel pointed out, as your co-counsel pointed out, this case was no discovery was engaged in to support any kind of fiduciary responsibility other than the employer-employee relationship. And that may not be sufficient, and we certainly wouldn't want to foreclose anything that might be revealed through discovery. And the other basis for that would be a pension annuitant relationship in which clearly the trustees of the plan and the administrator of the plan owe fiduciary duties under I believe a long line of cases. I think there was a third category you were going to address. Common law and privacy. And in this regard, I think this sort of dovetails very nicely with the 1983 argument, but I think what's important to recognize here is that technology has evolved, the unsavory behavior of certain individuals in our society has evolved, and so too should the law. We need to recognize that when BUSSE was originally decided, BUSSE looked and said, okay, well, there's no specific Illinois statute that we can rely on to recognize a right of privacy in this information, and therefore we're not going to recognize the common law right of privacy. But PIPA had not been enacted at that time. We now have a pronouncement of public policy from the Illinois legislature and a recognition by other courts since that time that we should provide protection and recognize a privacy interest with respect to this. And for that reason, we think it's important that this court recognize the change that's happened socially as well as technologically and recognize that a duty exists there. We'll give both you and your colleague a chance to respond. Remember this, if you want to cite additional authority, do it tomorrow. I intend to do it this afternoon, Your Honor. I will tell you, not by way of excuse, but by way of explanation, we updated the research as we were preparing for this argument, which was how you labor on Labor Day weekend. Just as there are two counsels that argued here, I assume there are two counsels on behalf of the appellees, and you've divided your time? Yes, Your Honor. Good afternoon, Your Honor. Lisa Hugie, Assistant General Counsel, Chicago Board of Ed. Thank you for your time this afternoon. The issues I will be covering that are common to both defendants are Section 1983, the Personal Information Protection Act, and the Consumer Fraud Act. The co-counsel for all parties will be handling all the common law issues. All right. First of all, I wanted to address the PIPA issue, Personal Information Protection Act. The only section which plaintiffs point to as being violated in PIPA is Section 5, and as Your Honors know, Section 5 is a definitional section. It has no duty attached to it. Well, let's focus on Justice Gordon's dichotomy regarding duty. Either it arises out of common law, and it can be recognized much later in the process than immediately, or it arises from the statute. But let's say you're absolutely right that the PIPA itself does not give rise to a duty. It does have a duty. Okay. And that's under Section 10, and the Board complied with that duty. And that is the only duty required under PIPA is to give notice. All right. Let's say that that's the only duty under PIPA, and the Board complied with it. But doesn't PIPA itself, the very naming of Social Security numbers as being private information, suggest that anyone handling Social Security numbers should be very careful in how they handle them? Because if you disclose that information to unsavory individuals, or negligently disclose that information, you could be violating a common law duty that could arise later on. Well, Your Honor, if the legislature wanted to make that be the duty, then they would have specifically Well, but don't forget, we're talking about common law as opposed to statutory. And the legislature does not have to create common law duty. Common law itself recognizes it. And there are duties that arise in the process of cases that come up, and there are a multitude of cases. I believe Justice Gordon wrote a decision about the shape of a pool that gave rise to a duty. Anyway. And there may have been diving cases or water cases where there's submerged obstacles down below, and there's a duty to give notice to people who might dive in that such a hazard exists. But duty arises in that sense. And I have a little difficulty in accepting that the Board can do anything it wants to do with the Social Security numbers that it doesn't have to safeguard them at all because it claims not to have any duty to safeguard them. I find that pretty remarkable. I mean, is it your position that any person, any entity, any company can give anyone Social Security information or other information out? Would that open up floodgates throughout America? Well, first of all, I just want to be clear that I am arguing the statutory duty. So I'm sorry. So I'll let Ms. Kendall address the common law aspect of it. But, no, it is not my position that the Board could intentionally disclose this Social Security numbers and things of that sort. Why couldn't it intentionally do it? Because if it wanted to, why couldn't it simply go ahead and do it? What's the difference? Whether it's negligent or it's intentional. That's just a matter of the standard that applies, but not as a bar. I think that gets us into the Consumer Fraud Act when we're talking about whether or not it was intentional or not. Here we're looking at nothing fraudulent happened. It was, as Judge Novak stated, it was a snafu. But you're not going to argue HIPAA? No, I am going to. I'm sorry. If you're going to argue HIPAA, I mean, what is the purpose of HIPAA? I mean, if there's no duty in HIPAA, then why do we have a HIPAA at all? HIPAA is that no medical records be disclosed. No medical records here were disclosed. Federal regulations exclude health information and employment records held by an employer from the definition of health information. Okay. No medical records were disclosed here. And a Social Security number is not a key to medical records? I mean, if you give somebody a Social Security number, you don't think that there's ways that they can get medical records now? That's speculation, Your Honor. I don't know if that is a possibility, but that hasn't been listed under HIPAA. I would argue that it's not. Okay. I will say that it makes it a little difficult to get to what really is the essence of the claim when we're confined to the statutory basis for the duty, because duty is pretty much the starting point for both sides. Okay. Well, I would like to argue the breach of fiduciary duty if you would like me to argue that, because that does go towards the Board of Education specifically. Sure. So I will argue that. Is there a special relationship between the Board and the recipients of that information? Is that? No, my argument in this regard is that the Board owed no fiduciary duty to the former employees. So far, no case in Illinois that I know of or that's been presented to the Board or in this country impose a fiduciary duty on an employer to former employees, and no statute either for that matter. If they were current employees, would there be a fiduciary duty between employer and employee? Well, Your Honor, when we're talking about the information that was disclosed here, we're talking about Social Security numbers and other information that's given to the employer from the employee, there's no agency relationship there. Neither the Board of Education nor the employee had the ability to say, no, I'm not going to give that information because the federal government requires that information. So there's no power that the Board holds over the employees, and employees also don't have any power over the Board. It's a requirement. So there's no fiduciary duty between the Board and employees? For this, yes, Your Honor, that's what I would argue. Well, I mean the Board requires that information. Because the Board has to have information from the federal government. They have to have this information. So they get this personal information from somebody, and you're telling us that by requiring that information they have no duty, they can disclose that information to the whole world. Is that what you're telling us? Is that the message we should give? The message that I'm speaking to today is that no case in Illinois, or that I know of, has imposed a fiduciary duty on an employer and former employees. And no statute has imposed a fiduciary duty on governmental employees. All we have, we know of, is ERISA. And that does impose a fiduciary duty. But ERISA, as you know, has specifically excluded the government. But this is not an ERISA case. No, it's not. But way of example that ERISA specifically excluded governmental employers from having a fiduciary duty. And, of course, if we were to recognize the fiduciary duty, it could come back to cause further problems. Because fiduciary duty wouldn't be confined simply to the safeguarding of self-security numbers. It might extend to other areas which could create further problems. Correct. And what we're looking at today is just whether or not there's a fiduciary duty as to the social security numbers and the information that was in the COBRA list. I believe plaintiffs also addressed the privacy clause. And I just briefly wanted to discuss that. First of all, they forfeited that challenge to the privacy clause because they didn't argue it in their opening brief. Nevertheless, if you look at Kelly v. Franco, that's the first district, that's the only case that the Board of Education could find that discusses whether the privacy clause creates a private right of action. And the holding there, as I understand it, is that it does not. Finally, Your Honor, if in your discussions regarding duty and negligence, I did want to address, and it hasn't been brought up by plaintiffs' counsel, but the Board is immune from liability based on the Tort Immunity Act under Section 2-107 where it states that the local public entity is not liable for injury caused by an action of employees for provision of information. All right. Thank you. We only need to reach that if we reach the other elements. Right. But since counsel is now discussing duty, I thought I would bring that to your attention. All right. Okay. Thank you. If it please this Court and counsel, my name is Karen Kendall. My client before this Court is all printing, but I am presenting the common law arguments on behalf of all the defendants. And in that respect, I would like this Court to appreciate the fact that Judge Novak, when she considered whether the plaintiffs had stated a cause of action under common law negligence, looked not just at the element of duty, but also breach of duty, damages, and proximate cause. But her ruling included the absence of a duty. It did, Your Honor. Let's try to address that point first and see whether there's, you know, we can get at least to the next, because we're not suggesting that all the elements fall down with duty. It's far from the case. But we can't reach those other elements until we get past duty. And as I commented to counsel, I find it pretty remarkable that the Board is claiming, and you as an agent of the Board can claim that you have no duty at all to preserve or to not disclose these social security numbers. Well, Your Honor, I'd like to make two observations with respect to that. One is that when Judge Novak ruled, that she was looking into the common law and saying, is there any duty, is there any case, has any court ever recognized such a duty? She said, no, they haven't. And then plaintiffs admitted in their briefing that, no, they haven't, and they admitted that before this Court. So we start with this premise, that if this Court is going to create a cognizable legal duty for which you can recover damages, this Court will be making that decision. Now, historically, torts have developed, and common law torts have been created under circumstances where there are serious injuries and serious damages. Like the swimming pool cases, for example. I mean, those are situations where the Court says, this is such a horrendous injury that we're going to, maybe it's never been recognized before. I don't think this Court does that type of thing. I don't think that we look at an injury and create a duty. I don't think that we manufacture anything. At least I know that in the years that I've been here, I have never done such a thing. I follow the law as it has been provided in case law. Well, Your Honor, I believe that's what Judge Novak was doing, in fact, was examining all the cases, not just in Illinois, but nationwide, and finding no duty. But what if there had never been another example of disclosure by snafu of social security numbers by an employer to a former employee's social security numbers? I mean, this case is a first impression, and therefore it's subject to the analysis in our case law regarding whether or not a duty exists. And I would then provide this Court with something I think is a reasonably good analogy. If I cooked a pot roast for this Court and I was salting it, I got a phone call, I forgot that I'd salted it, I come back and there's too much salt in the pot roast, it is going to be icky, something we don't like. But we don't live in a perfect world, and the lack of perfection in my pot roast and in these facts isn't the basis of a tort. It simply is not the basis of a tort. Except when you think of it in terms of not the individual, but let's say the cumulative injury to all the 1,700 former employees, if they all feel a little bit bad that their social security number was disclosed to someone else, when you consider the cumulative impact on all 1,700, it becomes a serious matter. And it isn't something we're going to take lightly, even though in any individual case the impact may not have been substantial. Well, believe me, Your Honor, I don't think anyone is suggesting that this is something to be taken lightly in that sense. But, however, when you say that it's not to be taken lightly, how do we prevent it from happening again unless the law says there is a duty on the part of those who receive social security numbers by their employees because it's a requirement. It's a requirement for the job. The law says they have a duty to safeguard that information. The law is rational, Your Honor. And the board didn't disclose this intentionally. It didn't disclose this because this court, I mean, it wasn't for lack of this court. Hold on, hold on. Let me stop you right there. Could the board have engaged in minimal supervision and have prevented the disclosure of the social security numbers? Absolutely true, isn't it? Well, Your Honor, I'm just... They could have simply read it, recognized, everybody's social security number is on this list. We've got to stop it from being sent out. That's a simple matter, wasn't it? Could I respond to this, Your Honor? Sure. I hardly ever open a record on appeal that doesn't have some inadvertently filed pleading from another case. You can't go for a record on appeal. You can't even go on a record because the record, in fact, hardly anyone is out there looking through records. And, in fact, they may be restricted to the parties involved in the case. All I'm saying is that the clerk's office makes mistakes in compiling or filing a pleading in a misnumbered case. That happens, but are we going to create a tort because of that, or should we create a tort merely because the accident occurred? How do you prevent it from happening again? How do you give the other side an incentive not to let it happen again? I think there's much incentive already. What would it be? What stands behind that incentive? Isn't it a duty? There is actually, I think, the fact that PIPA was written as it was written, which is the general assembly saying, look, we don't live in a perfect world. Mistakes do happen. When they happen, here's what you've got to do. And you've got to do it right away. As soon as you know a mistake has happened, you notify everybody who's received this. Well, the board did that, plus they went beyond that, and they bought this year of credit protection. Are they going to want to make sure that they never spend another $200,000 for a year of credit protection, plus the bad publicity, plus the ill will? Of course they are. Do they need a tort created to give them incentive to handle their employees' materials in a particular way? No, they don't. We already have PIPA. We already have PIPA. We already have the CFA. We have all these statutes. I don't understand your argument. I'm not sure whether you're arguing that there is no duty or that there is a duty and the duty was satisfied in this case. I'm not sure which it is. There are two different things that are going on here. And I think these were two things that Justice Novak considered. I think, as I said, she considered that no court, even though this does happen and there are a lot of cases on it, no court had ever decided to impose a duty under facts like this. She also acknowledged that this is a fact-pleading state. We don't have facts. And I would like, if the court gives me some time, to distinguish the Roe decision, which we did not get a chance to address in our briefs because it was raised in the reply brief for the first time. But she was doing something greater than that. She looked at all printing and she said, you're with a contract, you know, with the board. You don't have to proofread anything. And then she looked at the big picture and said, look, plaintiffs, you can't state a cause of action with respect to the board because you can't plead actual damages. Well, damages, as we said, damages is something else. That's another issue. That is certainly something that is going to be tough to establish. But duty presents a real concern, the absence of a duty rather, a claim that there is no duty. Actually, Your Honor, you don't have a cause of action unless you have facts which support a claim for damages alleged as well. So it's not just the plaintiffs can't just say, okay, find a duty. We've stated a cause of action. There's no question about that either. That doesn't result in a reversal of a 2615 ruling. Of course not. And we can affirm on any ground made out in the record, of course. And actually, I would suggest to this Court that. Where does that get us in terms of a duty? Is there a duty or is there not a duty to safeguard information given to the board by its former employees? It seems to me that the board cannot stand here and say that we have no duty to safeguard this information. We can disclose it to anyone we want. If by chance a contractor is a front for a Nigerian identity fraud company and the board discloses or sends that information to that company, I can't see how we could simply say that the board did not violate a duty. Your Honor, because we're dealing in the real world and because human beings are not perfect, we cannot create a tort every time there is an American person. I don't know if we're talking past each other because you want to insist on talking about a tort, which includes all those elements, the three elements. No, I'm not sure. We're trying to limit ourselves to let's talk about the individual elements to see whether we get past that element or it stops us in our tracks. And I have a problem with saying that there is no duty as opposed to no damage. There's no breach. Let me ask you this. When we talk about a right of privacy, isn't that the public disclosure of private facts? Doesn't people have the right not to have a public disclosure of their private facts? Isn't that a right? That's one of the types of privacy torts. The fact that there may not be a case, particularly at this subject matter, there's many cases of public disclosure of private facts, which creates duties all the time. Well, Your Honor, in this case, Judge Novak ruled that there was no cause of action for a right to privacy because what was disclosed were not private facts in the sense that they told you anything at all about the individual. What they are is an arbitrary number assigned by the federal government. My Social Security number is indistinguishable from yours. I mean, it's just got digits, you know. It doesn't tell you anything. Neither did the other information. It wasn't private in the sense that the mastectomy case was private information, private in the sense of an office romance is private, private in the sense that somebody's financial situation is private. You know what's private, though? Private is the linking of your name with your Social Security number. That's the private information. I could recite a nine-digit number and say it's likely someone's Social Security number, but so long as I don't know whose Social Security number, that number itself has no significance. The significance is the linking of that Social Security number to an individual, and that's what the Board provided. But that didn't, under Illinois case law, disclose any facts that we consider private. It is personal information. And the plaintiffs have tried to blur that line and contend that, you know, anything about me is private information. I would suggest very strongly that we disclose, just as we go through our day every day, what is considered personal information, but we don't disclose what's considered private information, such as our medical history, our earning ability. You're going to have to wrap up, okay? All right. I will say this, because this just came to mind, and I want to make sure that you and your co-counsel are aware of this. If you receive a motion to cite additional authority, you're free to file a reply or response to that motion to edify us in how that case does or does not apply, okay? We will certainly plan to do so, Your Honor. May I have just one minute to discuss the Roe case? Sure. As I said, we didn't get a chance to address the Roe case. That's because you won below. No. It was because it wasn't, well, at any rate. The repliaries don't get a response. Actually, the Roe case is interesting on several reasons, but it was a denial by a district judge of a motion to dismiss. In that case, in contrast to our case, there was HIPAA information and private personal information, such as employment information, income, specific health information, all disclosed, and it was disclosed online. Now, the plaintiffs there had the same problem the plaintiffs do here. They don't have any damages that they could point to. And so what the court was looking at was whether they can just say, I'm emotionally distressed and that's good enough. And what even that district court decision said was you have to have some kind of immediate damages in order to say, well, my identity might be stolen in the future. I think if you look at Roe, it actually supports our side and certainly doesn't provide a basis for stating a cause of action here. All right. Thank you. Thank you very much. Briefly in rebuttal, I wanted to make sure, since we've been talking a lot about duty today, that the record is clear, at least at oral argument, in terms of the statutory basis for the duty that the plaintiffs in this case contend exist, that create and or imply a duty where the violation of that statute would constitute evidence of negligence. And those include HIPAA, PIPA, the Privacy Act of 1974, which coincidentally specifically says that you cannot be punished by a governmental entity for refusing to provide your Social Security number. And it expressly says that, thereby necessarily implying that the federal government is recognizing that Social Security numbers are worthy of protection and are private information. The other statute as well that we raised was the Illinois Personnel Records Act. And that applies not only to existing employees, but also former employees, to the extent the employer continues to hold on that type of information. To be clear, the duty arises at both by statute and common law. And I would also add that most of the cases that have been cited in the briefs where there's a rejection of a claim or so forth, have been cited at the summary judgment stage, not at the motion to dismiss stage. And that, I think, explains in large part why the Roe decision went in the direction it did. There are certainly other cases under 1983 and elsewhere where they've looked at that, but it's all been developed after a full factual record and discovery, something we've not had the benefit of here. In terms of the immunity argument that was raised by the respondents, I think it's important to point out here that tort immunity does not apply, and it does not apply for two reasons. One, this was not a uniquely governmental function. And second, it didn't involve the exercise of any discretion. They submitted the information to the printer so it could be mailed out. There's no evidence in this record, and there's been no allegation made by either party, that it involved an exercise of discretion. Secondly, it's not uniquely governmental in function. The cases that they cite, there was a case where a mug shot had been published. Well, the exercise of police powers, the powers of arrest, and the power to detain are uniquely governmental functions. Here we have an employer who also happened to be the Chicago public school system that was sending out information about its present or former employees. That's not uniquely governmental. Private businesses do this all the time because they, too, are subject to COBRA. Now, counsel mentioned that, brought up ERISA by analogy. Frankly, I don't think that applies at all in this case, and I would add parenthetically that the federal government and Congress in particular has historically exempted themselves from almost every piece of social legislation they've ever come up with, starting with Title VII and a number of others. So the fact that they've exempted themselves or governmental entities out of ERISA. You have two mountains to climb. One of them is called duty and the other is called damages. By going into the other stuff, you're wasting your time. I'm sorry? I said you have two mountains to climb. Yes. One of them is called duty and the other is called damages. Yes. Try to restrict your arguments to those things. Okay. On the issue of – I think we've climbed the mountain on duty, and I think there's ample authority in the statutes. On the issue of damages, I would argue, number one, there's evidence of actual injury, as acknowledged by the defendants. Number two, as specifically pled by the plaintiffs. I know that the CUNY plaintiffs specifically pled on the issue of damage, that they had suffered emotional distress, that they had suffered physical manifestations that are consistent with emotional distress, nausea, sickness, et cetera. So there were physical sickness allegations as well as the financial type allegations that relate from the purchasing of additional credit protection coverage. At the pleading stage, that's sufficient. Whether ultimately the defendants are entitled to argue that somehow the plaintiffs either failed to mitigate or they should be offset by what the defendants did to help them, those are issues, as the Roe decision pointed out, are best left for the end of the discovery process, and you can look at those issues then. But at the pleading stage, we have sufficiently alleged what's necessary there. Okay. You'll need to wrap up. Okay. Finally, there was an argument that somehow we waived the privacy issue. We see that it's in your brief. At pages 20 to 22 and 38 to 41. We've read your brief. Thank you. We know it's there. All right. Well, thank all counsel, and once again, thank you for accommodating us on this late hour, and the case will be taken into advisement.